and TNW Irrigation Incorporated, Eppley's, Proseccollins by Joseph Dunn. Please proceed. Your Honor, may it please the court, counsel. Your Honor, this is the second time this case has been before the appellate court. Actually, it's been quite some time since the first time, December 2010. There was an opinion on this case reversing a motion for summary judgment that was granted in Tazewell County in this case. It was based off of a case that essentially deals with an individual, a one-man shop, I'll call him, Marty Vogel and his company, Crane Guy, Inc., who essentially did quite a bit of crane work at the time and possessed a crane, a certain 1997 T-Rex crane, a crane that he purchased from the defendants, Eppley's in this case, Roger Warner, Connie Warner. We also have TNW Irrigation. I'll explain why they're a name defendant in this case as well. It's essentially a breach of contract and a conversion claim, and what we're appealing here is the trial court's decision as to damages. Now, we believe the trial court got some things right and some things incorrect. We believe that what the Honorable Judge Reisinger got incorrect is to be reviewed by this court de novo review because it deals with the measure of damages, not necessarily the calculation of damages, but the measure of damages. The reason I say that is because in the trial court's order in this case, the trial court essentially stated, you know, the crane that Marty Vogel ended up with wasn't exactly the same or was newer, and so, therefore, I'm just going to delete that part of your calculation of damages. I'm just going to go with what I believe the differences were in the least value. And so, for some reason, the court went ahead and awarded damages for $49,000 to $4,044, being the difference between rent payments and loan payments plus shipping and down payment. Now, a brief discussion of the facts in this case is a little necessary to get to that point and why I believe that's an incorrect decision. The 1997 T-Rex crane was purchased from the defendants, I should say. The approximate value was about $100,000 for the purchase. My client went out to Boston to receive the crane itself. The travel cost itself cost $3,000 and another $3,000 for the down payment. A loan was taken out from Morton Community Bank, and he had possession of it. He had possession of it, used it for his business. He only had one crane at the time. He was a one-man shop, essentially. Twenty-one months later, after 21 payments of approximately $1,400 per month and maintaining and paying for all the costs for maintenance and the rest in this case for the crane, it was taken from him. So he claimed a breach of contract and alternatively a conversion claim. Many, many, many amended complaints later, we got to a trial on the case. What happened when she was left owing on the note at the time? No, after the 21 months, if you recall. I have that right here, actually, Your Honor. Actually, Your Honor, if I can raise that issue on rebuttal, I'll get that number for you. I don't have an exact number. So back to what I was saying here. The reason the calculation court decided it was incorrect is because they used what I describe as an incorrect measure of damages. And the idea there is what did Martin Vogel have to do in order to continue his business? Defense counsel has argued, well, you've got a bigger crane. I think there was a Rolls-Royce comparison of some sort. That's not completely accurate. And the reason is, is because Marty at the time had been in financial distraught, and he had some issues with bankruptcy prior to that. The defendants knew that of him. And so to take the crane would have been tantamount to putting him in a very precarious position so that his sole source of income would be taken away from him. So what did he do? He ended up leasing a crane, a much more expensive crane. He went from $1,400 per month to approximately $8,000 per month from one month to the other. He did that for approximately seven to eight months, eventually bought that crane. Granted, it was a 2005 crane. It was newer, less used, of course. However, the only testimony at trial with my client's testimony, having been in the business, crane operator, crane owner, crane business owner, for approximately 20 years, testified that the two cranes had virtually the same amount of capability, the same amount of lift, tow power, and the rest. I'm not a crane guy. He is. But the concept is, is he used the two cranes almost similarly. So the question really I think before the court, and I would seek the court's opinion on this, is should we take his situation back in 2006 when the crane was taken from him, giving his sole source of income, and evacuate? And I would put forth to the court that that's not the case, that we have put forth in the brief that there are two main alternatives or options for damages, consequential damages and compensatory damages. Compensatory damages oftentimes are synonymous with actual damages. Consequential damages are synonymous in a certain way. But really to get to the point of two main things that have come up in the case law is, did the damages arise naturally from the breach? Would the breaching party have reasonably been aware? Well, it would have been great had Marty been able to, in 2006, turn right around and buy the exact same crane. That wasn't available to him. It would have been wonderful if he got a great deal on another crane. Now, my client wouldn't have a claim and maybe had a technical breach, but no damages if he got a better deal than the crane. So whatever was left on the old crane, if he had gone back and got another crane that was cheaper than that, he wouldn't have had a claim necessarily for damages. But here we are with the fact that the case took as long as it has, unfortunately. We've been able to, in real life, actualize the payment plan that he put together and actualize his complete payment for the entirety of the 2005 crane. He actually made all the payments in 2016. And so because we have that reality, we know exactly what he paid for it. And that was put forth in trial and that, I don't believe, was even contradicted at all in terms of what he paid for it. Did he get a newer crane? Technically, yes. But are we to put plaintiffs in a position where he had an option of buying this crane, this 2005 crane, the second crane, needed to get his business rolling again, not lose clients that he's, you know, client lists that he's built up over a period of time? I don't think the law should impose that upon a plaintiff. What it should impose upon a defendant is awarding damages for a breach, which this very court had suggested back in the 2010 opinion, which the trial court correctly ruled upon in its order. And unfortunately, though, the calculated damages were off. And so what I included in two of my briefs, anyhow, was a calculation of the damages, if I can set forth with that now. Approximately $60,000, $60,603.16, were what's called the rental costs for the 2005 National Broom Crane, it's called. Then it switched into a purchase. And I'm actually reading off of page 12 of my original brief, Your Honors. The purchase of the National Broom Crane, then, with the purchase price of $268,871, interest rate included, rental costs included after that. And then, of course, we had an adjustment. And the adjustment would have been what the total cost of the T-Rex T-230, the original 1997 crane, would be. So it seems to me that the proffered measure of damages, given the pattern that we have, were reasonable in the sense that we're not looking for a windfall. We're looking for the actual out-of-pocket costs that the planes have had. Nothing more, nothing less. The total amount of damages that we were seeking from the trial court, and that I'd asked this court to enter, essentially, is $315,771.03. That's my major issue. I know I still have a little bit more time. I will address the two other issues. Conversion. I would put forth to the court, and I put this in my brief. I don't want to belabor it. The law of the case was set in 2010 in the first appellate opinion. The law of the case was there was an oral agreement. There was partial performance. And then the appellate opinion remanded for the terms. Very specific about that. I believe that made the law of the case. And when the trial court dismissed the conversion claim, it was an error. It was an error for that reason. The conversion claim, essentially, is rightful possession by the plaintiff, Marty Vogel, of the crane, the tanking, and damages associated with it. My understanding of the law is the breach of contract claim damages, as well as the conversion claim damages, should be similar, in that they're the actual consequential or compensatory damages. The third issue that came up. I'm sorry? Is there a requirement that an election be made? An election be made in the remedy? So we've argued it in the alternative, yes. I think the trial court did that. But what are you arguing here? That we're supposed to make an election? I suppose I'm arguing the alternative is what I'm doing. But wasn't your argument that we're supposed to make an election for you? No, no, no. I can't say that. If the court is asking you for an election, I suppose, then it would be more akin to a breach of contract. And for the law of the case that was made in this court back in 2010, with that opinion, all the arguments I made earlier in the trial court testimony. Right. Breach of contract. Breach of oral contract.  I don't think it would look completely different if you really looked at the calculation of damages that I have. I mean, it's a remand, but it's about a contract case. So actually, it originally, and defense counsel will know this as well, it actually was on a conversion case at the time. And the issue there, it was a little confusing because I believe the conversion counts in one of the first amended complaints at the time. There was a defense for failure to have a written contract for statute of frauds under the UCC, so that it was a good, over $500, unwritten contract, no signing. Well, and that was, at the time, Honorable Judge Schor, who entered that summary judgment. And then it came up on the, it was reversed, and on the issue of partial performance, which was a specific exception to the written contract. So. Two minutes, please. We amended throughout the process, and we actually put two counts down. The third issue. The third issue I have here is to do with T and W irrigation. Well, how does that really come into play? Well, we included them as a named defendant, but then was actually directed verdict out, right, at the end of plaintiff's case in chief at the trial court level. Our position at the time still is, is that when the current was taken from my client, it was then taken by Roger Warner and or Connie Warner, who were, at the time, officers of T and W Irrigation, Inc., still a corporation in good standing in the state of Illinois, and it was stored at real estate property that was owned by T and W Irrigation. So the question is, well, did they act as officers or not while they were doing the taking and then placing it over here? That was the argument that we had. We think that there was enough evidence during the trial, and really Marty Vogel was the only person that we had that gave testimony in this case. But at the time, they were officers, and they stored it at that location. They did not take it to their own personal residence or their own personal property in terms of real estate, but they actually took it to property owned by T and W Irrigation. So for that reason, we were looking into conversion and name those as defendants. Any other questions? Thank you, Your Honor. May it please the Court, Mr. Rustin. Your Honors, this, as Mr. Rustin pointed out, this case has a long and tortured history. I outline in my brief the various permutations that it's taken over the years. It was originally filed more than 12 years ago. Justice Carter hit the nail on the head with regard to what it was remanded for. At that time, it was just a conversion case, and the issue was the statute of frauds. It was dismissed, summary judgment. This Court found that partial performance took it out from under the statute of frauds and remanded it. Once it was remanded, because this Court used the word contract, it turned into a contract. The amended complaint added another count, but I agree that you've got to pick a horse here. I'm not sure what this appeal, his appeal, is asking for. If he's asking that this Court reinstate the conversion count, well, that's fine. I guess I would agree with that, because there's absolutely no evidence that the measure of damages in conversion is the fair market value of the property at the time it was taken. There was no evidence at all presented as to that issue. I suppose it would be better for me if I started with my cross-appeal and worked into his last argument, if that's okay with the Court. You can proceed the way you want. Thank you. The facts of this case are simple. This was a boyfriend-girlfriend situation where my clients, the Warners, simply loathed this man, gifted this man, whatever you want to call it, their credit, so that he could get a crane. They didn't sell him a crane, even under his testimony as to what was said to create this contract. They simply said... And then right now we're operating under the Sixth Amendment complaint, correct? Yes, sir. Which contained two counts, one contract and one conversion. Yes, sir. I would agree. I mean, there's no dispute about that, but the Sixth Amendment complaint is a dispute for us now. That's the one before you. And that complaint, let's talk about the breach of contract. And this is where I think it's gotten haywire at the trial court. It is a count in breach of contract, breach of an express oil contract, not breach of implied in fact or implied in law or quasi-contract, breach of an express oil contract. Now, what were the terms of that contract? I asked the defendant, I'm sorry, the plaintiff, time and time again in a cross-examination, what was this contract for? Was it leasing this? Was it a lease to Ireland? They had no idea. Just throw up enough facts and hopefully it gets cobbled together that it's a contract. There was no contract here. There was no consideration. My clients got nothing out of this. Zero. Originally, this has gone through several lawyers, so I'm the last one holding the bag here, but originally my clients, and in their pleadings and in their discovery, which we agreed would become part of the record, they said, we told them we'd help them get a claim if he took care of our daughter financially. She was living with him at the time. The plaintiff vehemently denied that. That's not what happened. Nothing was mentioned about her. So, as the last lawyer standing, I said, okay, I'm not going to have you testify then. He denies that. It's his burden of proof. What was the consideration then, plaintiff? Even if there isn't consideration or it's inadequate, are you saying that there was some kind of fraud or this is unconscionable? Because otherwise, usually just a lack of consideration isn't enough to set aside a contract. Is there something else? Are you saying there was some sort of fraud or this is unconscionable? I think lack of any consideration is enough to set aside a contract. I mean, there was consideration. It had to be some agreement that he was going to make the payment on a loan that they were obligated to make sure got paid. That was the terms of the contract. They were simply, and again, I argued this at the trial court. I did not brief it here. Yeah, I believe this was an illegal contract. I don't think you can loan someone your credit so that two things can happen. One, they're in the middle of a bankruptcy, so they don't have to disclose that to their creditors, and there's no paper trail leading that back to them, so you can just move on by. And number two, you're defrauding the bank by doing a UCC statement saying, we're buying this crane. It's going to stay at our place. No mention of the plaintiff. I believe this contract was void ad initio because of that. And that argument is where? That argument is, I did not make that argument in my brief. So. A promise for a promise is, but a gift is not. The old law school case, give my grandson $5,000 if he doesn't smoke, drink, or curse. It leads into a cause of action. It leads into a promissory stop. But that's not what was pled here, and that's not what was argued, and that's not why we're here. We're here to determine if there was a contract. And I don't think there's one iota of evidence that there was any consideration that the Warners received. When put to the test and asked what consideration he said he comes up with for the first time at trial, I did some work for him before, and they wanted to kind of repay me for that. Well, there's clear case law that past consideration is no consideration. It wasn't envisioned at the time. It had nothing to do with this crane deal. The issue on the appeal with regard to the calculation of damages, I suppose the first thing we need to figure out is the standard of review. Counsel has stated it's de novo. I believe it's a manifest weight of the evidence, and I cited the case law to support that. It's the 1472 North Milwaukee Unlimited case that says on a bench trial and an award of damages for contract, it's a manifest weight of the evidence standard. He's trying to, in his standard of review, convert this into whether the trial judge legally used the right standard or not to take the measurement of damages, I guess is his argument. Is that right? Whether the trial judge used the improper method of calculating damages. He suggested that his method is the way to calculate damages in a contract case, which is, I've briefed that. That's, of course, not the only way to do it. That's the reason he's using that standard of review. But your position is this was a factual calculation. He clearly set out how he got to that number. It wasn't arbitrary and capricious. The last thing, oh, to count against the TNNW irrigation, I don't know, counsel seems to shift the burden of proof there and say, well, we know they worked for the TNNW. They didn't present any evidence that they weren't operating under an agency when they took this thing. He has the burden of proving that, of course. And there was no evidence that they were operating as an agent at the time or within the course and scope of their agency at the time. And then lastly, this has been mentioned kind of offhand a few times,  the Crane Guy Inc. is still a party to this. And the Crane Guy Inc. wasn't even in existence when any of this happened. So I have moved to have that dismissed, and I don't know that the court, the trial court, was real clear about. I think it just got ignored. So we have a, technically right now, an entity that's no longer in existence and wasn't in existence at the time has a judgment. So I just thought I would mention that. I don't know. Where does that leave us as to that point? Well. Since you've mentioned it. Again, Judge, it's, I guess there's not nowhere. I guess there's nothing you can do at this point from this standpoint. I just have to wait and see when he tries to execute on judgment, depending on what you do. He was also awarded as an individual. The judgment was entered in his favor as an individual and in the name of this entity that you said doesn't exist now and didn't exist at the time of the injury. Correct. Correct. Two minutes, please. And that's all I have unless you have any questions. Do I know that conversion, any kind of conversion is inconsistent if there's a contract claim? Correct, under the Norman Doctrine. It's one or the other. If the damages you're claiming are money damages. Is it under the economic loss doctrine? Yes. Yes, a tort case versus a contract case. And I've cited that in the brief, so. Thank you. You're welcome. Your Honors. Just so, Brian, I did find that number for you. It actually was in my brief. At the time the question came to me, I couldn't locate it. It's actually page 12 and 13 of my brief. At the end of that long calculation exhibit, I should say, it's a simple multiplication example. $1,466.56, the monthly payments made towards the Morton Community Bank loan for the T-230, the 1997 crane, came out to $29,331.20. What is added to that is $3,000, which was the down payment. That is part of the loss that we adjusted for. I wanted to make sure that all that the plaintiff was seeking at the time, still is, was the difference in the two cranes. What did he have to pay versus what he bargained for at the time? That was the issue. Does that address your question? Thank you. On the issue, if I can respond briefly to the language of a gift. None of this really looks like a gift. If you take a look at the parameters of which Marty Vogel was to perform his duties, what he was to perform on the oil contract was take possession, maintain it, pay for liability insurance for it, and make the payments. He did all those things. Imagine if he had not done all those things, particularly if he had not paid the bank. What would have happened? He would have been taken aback. Well, that's not a gift by its very nature. A gift would have been, there you are. If the crane would have been given, it would have been, I give this to you wholeheartedly, no other retribution, no other breach, no other kickbacks. No, it's not that. It was contract consideration. I do believe the appellate opinion in this court in 2010 said the same thing. Even though it was in the context of a conversion claim, that language specifically there, the child court correctly ruled that there was a, I believe the word clear was used, oral agreement, and that it was breached. That's all that I have unless the justices have any more questions for me. I just want to make sure I stress this point based upon that. Whatever this agreement was, it was not for the sale, lease, or anything else of a crane. The gift was, we'll use our credit. We'll let you use our credit to buy a crane. To his hypothetical, what would happen, God forbid, if he stopped paying it? I'll tell you what would have happened. My clients would have been in court. My clients would have had a judgment against them. He wouldn't have. It was a gift or a loan of their credit. It's called a straw man purchase. And it happens, and it happened here. That's what this agreement was, and it's an agreement that there was no consideration for. Thank you. Thank you, counsel. Thank you for your arguments.